# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Ali Partovi,

       Petitioner

v.

Pamela Bondi, et al.,

       Respondents

Case No.: 2:25-cv-02283-JAD-DJA

**Order Granting Preliminary Injunction
and Directing Release of Detainee**

[ECF No. 11]

Petitioner Ali Partovi is an Iranian citizen who arrived in the United States in 2001 and was ordered removed in 2002. But the United States could not secure his removal to Iran, so at one point he was released from ICE custody under a supervision order. In June 2025, ICE arrested Partovi, and he has been detained at the Nevada Southern Detention Center ever since.

In December 2025, Partovi filed a pro se petition for a writ of habeas corpus seeking his release from custody. I appointed the Federal Public Defender to represent him, and the FPD filed a motion for a temporary restraining order (TRO) seeking his immediate release pending a decision on the habeas petition. Partovi contends that his prolonged detention exceeds the government's authority because he is likely to be removed to Iran in the foreseeable future. He also contends that the government has deprived him of his due-process rights by failing to give him notice and an opportunity to be heard before pursuing removal to a third country—the government's only removal option, according to Partovi, since removal to Iran is exceedingly unlikely. This court held a hearing on Partovi's TRO motion on Friday, January 9, 2026.

I convert Partovi's motion to one for a preliminary injunction, and I grant it in part. Partovi has shown a likelihood of success on the merits of his claim that his prolonged detention exceeds the government's statutory authority under the United States Supreme Court's opinion in

*Zadvydas v. Davis*[1] and that he will suffer continued irreparable harm if he is not released.  So I direct the respondents to secure his immediate release under reasonable conditions of supervision set forth in 8 U.S.C. § 1231(a)(3).  But Partovi has not shown a likelihood of success on his third-country-removal claim because it appears that any such claim is not yet ripe, so at this time I do not impose the requested relief that ICE be prohibited from removing Partovi to a third country.

## Background

In 2001, petitioner Ali Partovi attempted to enter the United States using a false passport.[2]  He sought asylum and protections under the United Nations Convention Against Torture, but those applications were denied and he was ordered removed to Iran in 2002.[3]  He also pled guilty to the offense of using a false passport, and was held in some combination of criminal and immigration custody until 2011.[4]  He was released on an order of supervision and remained in this country and at liberty until he was again arrested in June 24, 2025.[5]  He has been in ICE custody ever since.

---

[1] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

[2] ECF NO. 15-1 at 2 (order in Partovi's asylum proceedings).

[3] *Id.*

[4] ECF No. 15 at 2.  At the hearing, government counsel confirmed that he was unaware of how long Partovi had been in ICE custody awaiting removal during that time, as opposed to being in custody for his passport-related offense.

[5] ECF No. 1-1 at 2; ECF No. 11 at 2.

1

**Discussion**

2 **A.    This court has jurisdiction to order relief related to Partovi's habeas petition.**

3        The constitution provides that the writ of habeas corpus is "available to every individual

4 detained in the United States."[6]  That writ permits a person who is in custody to challenge the

5 legality of his detention, and the court has the authority to release the petitioner if it determines

6 that the petitioner is illegally detained.  The court's habeas jurisdiction encompasses a

7 noncitizen's challenge to his detention under the United States's immigration laws.[7]

8

9 **B.    This nation's immigration laws permit a noncitizen's detention pending removal,**
**but that detention period should not exceed six months without a significant**
**likelihood of removal in the reasonably foreseeable future.**

10

11        ***1.    The government has authority to detain noncitizens after they have been***
***ordered removed.***

12        The Immigration and Nationality Act (INA) and its implementing regulations establish a

13 complex set of rules governing the government's authority to arrest, detain, order removed, and

14 deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been

15 ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order

16 of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a

17 court orders a stay of the removal of the alien, the date of the court's final order," or the date the

18 noncitizen is released from non-immigration detention.[8]  During that 90-day period, detention is

19 mandatory.[9]  The statute gives the government the ability to detain a noncitizen beyond that

20 removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of

21

---

22 [6] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[7] *Zadvydas*, 533 U.S. at 687; *Demore v. Kim*, 538 U.S. 510, 517 (2003).

23 [8] 8 U.S.C. § 1231(a)(1)(B).

[9] 8 U.S.C. § 1231(a)(2)(A).

status requirements or entry conditions, violations of criminal law, or reasons of security or

foreign policy,"[10] or has been determined "to be a risk to the community or unlikely to comply

with the order of removal."[11]  If those conditions aren't met, the government may release the

noncitizen "subject to certain terms of supervision."[12]

### 2. The due-process clause of the U.S. Constitution prohibits the government from indefinitely detaining noncitizens pending removal.

Section 1231(a)(6) does not limit the length of time that a noncitizen may be held post-

removal period.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the

government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because

that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's

due-process clause.[13]  To avoid its constitutional concerns, the High Court interpreted the statute

to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[14]  It

determined that six months of post-removal-period detention is presumptively reasonable.[15]  But

after six months, the noncitizen must "provide[] good reason to believe that there is no

significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged

detention exceeds the government's statutory authority and that he should be released from ICE

custody.[16]  If the noncitizen meets that burden, "the government must respond with evidence

---

[10] *Zadvydas*, 533 U.S. at 682.

[11] 8 U.S.C. § 1231(a)(6).

[12] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[13] *Id.* at 690.

[14] *Id.* at 699.

[15] *Id.* at 701.

[16] *Id.*

4

sufficient to rebut that showing."[17]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[18]

**C.    TROs and preliminary injunctions require a showing that the petitioner is likely to succeed on the merits of his claims and will suffer irreparable harm if relief is not granted.**

A temporary restraining order or preliminary injunction is an "extraordinary" remedy "never awarded as of right."[19]  The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."[20]  The Ninth Circuit recognizes an additional standard: if "plaintiff[s] can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiffs' favor,' and the other two *Winter* factors are satisfied."[21]  Under either approach, the starting point is a merits analysis.

The respondents were given notice of Partovi's TRO motion, as well as an opportunity to respond and to be heard at an in-person hearing.  I thus sua sponte convert the motion into one for a preliminary injunction.[22]  The standard for both forms of relief is the same, the parties were

---

[17] *Id.*

[18] *Id.* (cleaned up).

[19] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[20] *Id.* at 20.

[21] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

[22] *See* Fed. R. Civ. P. 65 (distinguishing between a temporary-restraining order and a preliminary injunction based on notice and the responding party's ability to be heard).

given notice and a hearing, and the nature of the relief granted by this case is more properly

addressed by a preliminary injunction.

**D.   Partovi has shown that he is likely to succeed on his prolonged-detention claim, but not his third-country-removal claim.**

      *1.     Partovi is likely to succeed on the merits of his prolonged-detention claim.*

Partovi has shown a likelihood of success on his prolonged-detention claim.  The parties

agree that Partovi has been detained for longer than six months, taking this case out of the

presumptively reasonable period of detention established by *Zadvydas*.[23]  So Partovi bears the

initial burden of showing that there are "good reasons to believe that that there is no significant

likelihood of removal in the reasonably foreseeable future."[24]  His removal was ordered in 2002,

and ICE was unable to obtain travel documents to Iran in the intervening 24 years.  Given the

fact that Partovi has been subject to removal for almost a quarter of a century with no indication

that he could be returned to Iran, I find that he has met his burden to provide good reasons why

he believes that he will not be removed in the reasonably foreseeable future.

---

[23] The parties disagree over whether Partovi's post-removal detention periods, if any, between 2002 and 2011 should count toward the *Zadvydas* calculus.  Many courts have found that prior detention periods must be considered; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.  *See, e.g., Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Was. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").  Because Partovi's current detention exceeds the six-month threshold and I find that the government has not shown that he will be removed in the reasonably foreseeable future even when considering that his detention has not yet extended too far beyond that presumptively reasonable period, I need not and do not address this issue here.

[24] *Id.* at 701.

The government fails to meet its shifted burden to provide evidence showing that there is a significant likelihood of his reasonably foreseeable removal. It merely states without evidentiary support that "ICE is actively in the process to obtain the necessary travel documents from Iran to remove" Partovi.[25] That bald assertion is plainly insufficient to carry its burden. So I find that Partovi is likely to succeed on the merits of his prolonged-detention claim, and I order his immediate release.

### 2. Partovi has not shown that he is likely to succeed on his third-country-removal claim.

Partovi also contends that, because he cannot be removed to Iran, the government may try to remove him to an unidentified third country. And he seeks an injunction prohibiting the government from removing him to a third country without first "giving him the opportunity to reopen" removal proceedings with an immigration judge.[26] If the government cannot remove the noncitizen to the country listed on his removal order, it may still remove the noncitizen to any "country whose government will accept" him.[27] This catchall provision is generally referred to

---

[25] ECF No. 15 at 7. At the hearing, respondents' counsel relied on a BBC article that was submitted in another case. That article does not constitute competent evidence. It reports that Tehran officials confirmed that "a chartered plane carrying more than 50 Iranians" departed from the United States to Iran. Khashayar Joneidi, *US deports second group of Iranian nationals, officials say*, BBC (Dec. 8, 2025) https://www.bbc.com/news/articles/c23e77ln3d1o. But it also says that "US immigrations officials could not 'confirm or deny a flight' for security reasons." *Id.* And even if I accept that this flight occurred, nothing in this article provides me with evidence that Iran and the United States have "reopened diplomatic relations" as the government suggested at the hearing. Nor does it provide support for the implied argument that, because Iran accepted 50 deportees, it will accept even more, and one of those future deportees will be Partovi.

[26] ECF No. 11 at 2.

[27] 8 U.S.C. § 1231(b)((2)(E)(vii).

as "third-country removal."  But the government cannot remove a noncitizen to a third country if he credibly fears persecution or torture in that country.[28]

Partovi alleges that in July 2025, the Department of Homeland Security (DHS) implemented a policy that permits third-country removal without notice or an opportunity to be heard if the third country gave DHS credible assurances that noncitizens removed from the United States will not be persecuted or tortured.[29]  And if those assurances are not given, ICE may still remove a noncitizen to a third country with only 6–24 hours' notice.[30]  Partovi contends that the policy violates the Fifth Amendment's due-process clause and existing law requiring that a noncitizen have the opportunity to be heard on fear-based claims before being removed to a third country.[31]

The problem with Partovi's argument is that the government has not indicated any intention of seeking his removal to a third country.  It rather states (albeit without evidentiary support) that it remains focused on effectuating his deportation to Iran.  And though it appears that removal to Iran is unlikely, the record does not support the inference that it is entirely impossible or that the government has given up on its attempts to effectuate Partovi's removal to the country listed on his removal order.  Without more, I cannot conclude that an active controversy exists with respect to Partovi's third-country-removal risk.  So I decline to issue an order prohibiting the government from removing Partovi to a third country.

---

[28] 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. §§ 200.1, 208.16.

[29] *See* ECF No. 11 at 8–9.

[30] *Id.* at 9.

[31] *Id.* at 6–9.

**E.    Partovi has established irreparable harm.**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"[32]  The Ninth Circuit has also recognized that "unlawful detention certainly constitutes extreme or very serious" injury that "is not compensable in damages."[33] The government doesn't meaningfully address this factor, arguing only that "showing a possibility of irreparable harm is insufficient: and that his harm "is essentially inherent in detention."[34]  Neither of these arguments makes any sense.  Partovi has not shown the mere "possibility of harm"—he is currently suffering irreparable harm by the fact of his continued, likely unlawful detention.  And the harm of *unlawful* detention is not "essentially inherent" in detention.  I find that Partovi's continued and likely unlawful deprivation of liberty establishes that he will continue to suffer irreparable harm if he is not released from custody.

**F.    The balance of equities and public interest tip sharply in Partovi's favor.**

The last two *Winter* factors merge when the government is the opposing party.[35]  Partovi has shown that the harm of his continued deprivation sharply outweighs the government's minimal hardship caused by releasing him under conditions of supervision like those that he has been subject to for years.  The government's interest in enforcing immigration laws does not tip

---

[32] *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

[33] *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (cleaned up).

[34] ECF No. 15 at 4.

[35] *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

1  the scales for the government, especially when Partovi has shown that his immigration detention

2  is likely unlawful.[36]

3  **G.    The court declines to impose a bond requirement.**

4          "Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive

5  relief 'only if the movant gives security in an amount that the court considers proper to pay the

6  costs and damages sustained by the party found to have been wrongfully enjoined or

7  restrained.'"[37]  "Despite the seemingly mandatory language, Rule 65(c) invests the district court

8  with discretion as to the amount of security required, if any."[38]  Because the government does not

9  provide any argument concerning costs and damages it might sustain and I am convinced that it

10  will not incur any such damages if it was wrongfully enjoined, I join the growing number of

11  courts that decline to require bond in cases like this.[39]

**Conclusion**

13          IT IS THEREFORE ORDERED that petitioner Ali Patrovi's motion for a temporary

14  restraining order **[ECF No. 11]** is converted to a motion for a preliminary injunction and **is**

15  **GRANTED in part.  Petitioner Ali Patrovi must be released from detention immediately**

16  **under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3).**  Determining

17  reasonable terms of supervision must not impede the immediate release of the petitioner.

18          IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

---

[36] *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (recognizing that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue").

[37] *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)).

[38] *Id.* (cleaned up).

[39] *See Bunnell v. Noem*, 2025 WL 3707588, at *9 (D. Nev. Dec. 22, 2025) (collecting cases in which "[c]ourts regularly waive security in cases like this one").

(1) notice of the date, time, and location of Partovi's release at least 24 hours before the release is set to occur so that arrangements for his travel can be made.

(2) notice that Partovi's release was effectuated within three days of this order.

IT IS FURTHER ORDERED that this injunction will remain in effect, absent a successful motion to modify or dissolve it, until this court issues a final decision on Partovi's habeas petition.

IT IS FURTHER ORDERED that counsel for respondents are directed to immediately provide notice of this order to the restrained parties they represent.

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

_____
U.S. District Judge Jennifer A. Dorsey
January 13, 2026