**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Ali Partovi,

        Petitioner

v.

Pamela Bondi, et al.,

        Respondents

Case No.: 2:25-cv-02283-JAD-DJA

**Order Granting Habeas Petition and Closing this Case**

[ECF No. 1-1]

Petitioner Ali Partovi is an Iranian citizen who arrived in the United States in 2001 and was ordered removed in 2002. But the United States could not secure his removal to Iran, so at one point he was released from Immigration and Customs Enforcement (ICE) custody under a supervision order. But in June 2025, ICE arrested Partovi and detained him at the Nevada Southern Detention Center. In December 2025, Partovi filed a pro se petition for a writ of habeas corpus seeking his release from custody.

I appointed the Federal Public Defender to represent him, and the FPD filed a motion for a temporary restraining order (TRO) seeking his immediate release pending a decision on the habeas petition. Because Partovi had good reason to believe he would not be removed in the reasonably foreseeable future and the government failed to bring forth any evidence that efforts to remove him were underway, I converted the TRO to a preliminary injunction, granted it, and ordered Partovi's immediate release. The government released him on January 15, 2026.

I now grant Partovi's habeas petition. Partovi was detained for at least six months with no good reason to believe his removal was forthcoming, and the government has failed to present any evidence suggesting otherwise. So I prohibit the respondents from re-detaining Partovi absent a demonstrable change in circumstances regarding ICE's ability to remove him to Iran.

He is to remain released under an order of supervision.  I also find that Partovi is entitled to relief on his third-country-removal claim, so I prohibit the government from removing him to a country not listed on his removal order unless the government complies with the notice and hearing requirements set forth in this order.

**Background**

In 2001, petitioner Ali Partovi attempted to enter the United States using a false passport.[1]  He sought asylum and protections under the United Nations Convention Against Torture, but those applications were denied and he was ordered removed to Iran in 2002.[2]  He also pled guilty to the offense of using a false passport, and he was held in some combination of criminal and immigration custody until 2011.[3]  Partovi was released on an order of supervision and remained in this country and at liberty until he was again arrested by ICE in June 24, 2025.[4]

Partovi filed a pro se habeas petition seeking release from custody on November 17, 2025, arguing that ICE lacked statutory authority to continue detaining him because there was no likelihood that he would be removed in the reasonably foreseeable future.[5]  I appointed counsel for Partovi, and he then filed a motion for a TRO seeking his immediate release on the same

---

[1] ECF NO. 15-1 at 2 (order in Partovi's asylum proceedings).

[2] *Id.*

[3] ECF No. 15 at 2.  At the hearing, government counsel confirmed that he was unaware of how long Partovi had been in ICE custody awaiting removal during that time, as opposed to being in custody for his passport-related offense.

[4] ECF No. 1-1 at 2; ECF No. 11 at 2.

[5] ECF No. 1-1.

grounds.[6]  After briefing and a hearing, I converted the TRO motion into one for a preliminary injunction and granted it.[7]  ICE released Partovi on January 15, 2026.[8]

## Discussion

### A.    This court has jurisdiction over Partovi's claims.

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[9]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[10]

### B.    Partovi has shown that he is entitled to relief on his prolonged-detention claim.

#### 1.    *The government has authority to detain noncitizens after they have been ordered removed.*

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date

---

[6] ECF No. 11.

[7] ECF No. 20.

[8] ECF Nos. 23, 24.

[9] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[10] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

the noncitizen is released from non-immigration detention.[11]  During that 90-day period, detention is mandatory.[12]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[13] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[14]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[15]

### 2. The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[16]  To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[17]  It determined that six months of post-removal-period detention is presumptively reasonable.[18]  But after six months, the noncitizen must "provide[] good reason to believe that

---

[11] 8 U.S.C. § 1231(a)(1)(B).  The government doesn't challenge jurisdiction in this case.

[12] 8 U.S.C. § 1231(a)(2)(A).

[13] *Zadvydas*, 533 U.S. at 682.

[14] 8 U.S.C. § 1231(a)(6).

[15] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[16] *Id.* at 690.

[17] *Id.* at 699.

[18] *Id.* at 701.

there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[19]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[20]  And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[21]

### 3. *Partovi has shown good reasons to believe he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with any evidence of likely removal.*

Partovi was detained for longer than six months, taking this case out of the presumptively reasonable period of detention established by *Zadvydas*.[22]  So Partovi bears the initial burden of showing that there are "good reasons to believe that that there is no significant likelihood of removal in the reasonably foreseeable future."[23]  His removal was ordered in 2002, and ICE was

---

[19] *Id.*

[20] *Id.*

[21] *Id.* (cleaned up).

[22] The parties disagree over whether Partovi's post-removal detention periods, if any, between 2002 and 2011 should count toward the *Zadvydas* calculus.  Many courts have found that prior detention periods must be considered; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*.  *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Was. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals").  Because Partovi's current detention exceeds the six-month threshold and I find that the government has not shown that he will be removed in the reasonably foreseeable future even when considering that his detention has not yet extended too far beyond that presumptively reasonable period, I need not and do not address this issue here.

[23] *Zadvydas*, 533 U.S. at 701.

unable to obtain travel documents to Iran in the intervening 24 years.  Given the fact that Partovi has been subject to removal for almost a quarter of a century with no indication that he could be returned to Iran, I find that he has met his burden to provide good reasons why he believes that he will not be removed in the reasonably foreseeable future.

The government fails to meet its shifted burden to provide evidence showing that there is a significant likelihood of his reasonably foreseeable removal.  It merely states without evidentiary support that "ICE is actively in the process to obtain the necessary travel documents from Iran to remove" Partovi.[24]  That bald assertion is plainly insufficient to carry its burden.[25] So Partovi's habeas petition on this ground is granted, and I prohibit the federal respondents from re-detaining Partovi absent proof of changed circumstances demonstrating that his removal to Iran is significantly likely to occur in the reasonably foreseeable future.

---

[24] ECF No. 15 at 7.  At the hearing, respondents' counsel relied on a BBC article that was submitted in another case.  That article does not constitute competent evidence.  It reports that Tehran officials confirmed that "a chartered plane carrying more than 50 Iranians" departed from the United States to Iran.  Khashayar Joneidi, *US deports second group of Iranian nationals, officials say*, BBC (Dec. 8, 2025), https://www.bbc.com/news/articles/c23e77ln3d1o.  But it also says that "US immigrations officials could not 'confirm or deny a flight' for security reasons." *Id.*  And even if I accept that this flight occurred, nothing in this article provides me with evidence that Iran and the United States have "reopened diplomatic relations" as the government suggested at the hearing.  Nor does it provide support for the implied argument that, because Iran accepted 50 deportees, it will accept even more, and one of those future deportees will be Partovi.  I also note that the parties' briefing was submitted before the United States and Iran became engaged in armed conflict.  I make no findings concerning the potential impact that development might have on the United States's ability to continue sending repatriation flights to Iran.

[25] Since the TRO hearing, the government has not supplemented the record with any additional evidence showing a likelihood of foreseeable removal.

**C.**     **Partovi has shown that the government's third-country-removal procedures violate due process.**

   *1.*       *The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.*

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to.  The first choice is a country "to which the [noncitizen] wants to be removed."[26]  If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[27]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[28]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[29]  And the United Nations Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a

---

[26] 8 U.S.C. § 1231(b)(2)(A).

[27] 8 U.S.C. §§ 1231(b)(2)(E)(i–vi).

[28] 8 U.S.C. § 1231(b)(2)(E)(vii).

[29] 8 U.S.C. § 1231(b)(3)(A).

noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise CAT challenges after ICE determines that deportation to the country on his removal order is impracticable and instead chooses to pursue a third-country removal.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[30]  In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[31]  ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[32]

After the notice of removal is served, the ICE officer "will <u>not</u> affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations

---

[30] The parties did not attach the third-country-removal policy to any of the filings in this case. But it has been included in several other cases, it is the subject of appeal in the First Circuit, *see D.V.D. v. DHS*, 778 F. Supp. 355 (D. Mass. 2025)*, appeal pending in* Case No. 26-1212 (1st Cir.), and it is available online at https://perma.cc/Q25A-D5DP.  The government does not dispute that this policy governs third-country removals.

[31] *Third Country Removals Following the Supreme Court's Order in Department of Homeland Security v. D.V.D.*, U.S. Immigration and Customs Enforcement (July 9, 2025), available at https://perma.cc/Q25A-D5DP.

[32] *Id.*

(ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[33]  If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[34]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[35]

2.    ***ICE's third-country policy violates due process, so any attempt to remove Partovi to a third country must be preceded by notice and a meaningful opportunity to be heard.***

Partovi contends that ICE's third-country-removal policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause. "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[36]  The "fundamental features of due process" are notice and an opportunity to be heard.[37]

The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal.  But it has come close.  In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[38]  It explained that "[f]ailing to notify individuals who are subject to

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[37] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[38] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."[39]  And in the unpublished case of *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[40]

District courts have extrapolated these holdings to find that adequate due process requires ICE to (1) provide notice; (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response;" (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is yes; and (4) provide "adequate time to prepare and file a motion to reopen[.]"[41]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[42]  District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[43]

---

[39] *Id.*

[40] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (unpublished) (cleaned up).

[41] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen*, 796 F. Supp. 3d at 727.

[42] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country).

[43] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*,

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide adequate due process to a noncitizen who may be removed to that country. Notice, let alone an opportunity to be heard, is not available to a noncitizen in that situation. And ICE's second scheme doesn't fare much better. Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country. Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless a USCIS officer determines, through a mystery process, that the noncitizen would be likely to prove that any of those protections applies. So this process does not comport with the fundamental requirements of due process.

### 3. *Partovi has standing to challenge the third-country-removal policy.*

The government does not respond to the merits of Partovi's third-country-removal claim. It instead insists that Partovi's removal proceedings "involv[e] removing [him] to his country of citizenship which is Iran."[44] Though the government doesn't frame it as such, I construe this as a lack-of-standing argument. But a petitioner seeking prospective injunctive relief may show he has standing to pursue that relief if "he is realistically threatened by a repetition of the violation."[45] If a plaintiff's potential injury stems from a written policy or a pattern of officially sanctioned behavior, he need not have already suffered a harm in order to seek prospective

---

2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 778 F. Supp. at 389.

[44] ECF No. 16 at 8.

[45] *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012).

11

injunctive relief.[46] Rather, "the plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way."[47] That an injury is "directly traceable to a written policy [suggests that] there is an implicit likelihood of its repetition in the immediate future."[48]

Partovi has shown that he is likely to be harmed by ICE's third-country policy. The government has failed to show any active attempts to remove Partovi to Iran. If, for whatever reason, Iran ceases to be a viable removal option, the government's policy allows ICE to remove Partovi to a third country with little or no notice and no meaningful opportunity to challenge that removal. Because Partovi is subject to ICE's removal discretion, and given that ICE has endorsed a policy for third-country removal that could affect any noncitizen who faces hurdles being removed to his home country, it is entirely likely that Partovi could be subject to a third-country removal without any opportunity to raise fear-based challenges to that removal. And because of the policy's emphasis on speedy removal without process, it's likely that a noncitizen like Partovi could be removed to a third country before he has the chance to raise his constitutional concerns through a habeas petition. So I join the growing number of courts finding that a noncitizen awaiting removal has standing to challenge the government's third-country-removal policy.[49] And because that policy violates due process, I prohibit the federal

---

[46] *See id.* at 998 ("First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy. Second, the plaintiff must demonstrate that the harm is part of a pattern of officially sanctioned behavior, violative of the plaintiff's federal rights." (cleaned up)).

[47] *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007), *abrogated on other grounds as recognized in Healy v. Milliman*, 164 F.4th 701 (9th Cir. 2026).

[48] *Id.* at 986.

[49] *See, e.g.*, *Esmail v. Noem*, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025); *Elshourbagy v. Bondi*, 2025 WL 3718993, at *6 (W.D. Wash. Dec. 23, 2025); *Nguyen*, 796 F. Supp. at 736.

respondents from rearresting Partovi with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.[50]

## Conclusion

IT IS THEREFORE ORDERED that petitioner Ali Partovi's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 1-1] is GRANTED.  The federal respondents are enjoined from re-detaining Ali Partovi absent proof of changed circumstances making his removal to Iran reasonably foreseeable.**  Partovi is to remain under reasonable supervision conditions as articulated in 8 U.S.C. § 1231(a)(3).

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Ali Partovi to any country not listed on his removal order unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that the Clerk of Court is directed to ENTER JUDGMENT for the petitioner and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
April 21, 2026

---

[50] Partovi also brings a claim under the Administrative Procedure Act, contending that ICE didn't follow its regulations when it re-arrested him.  But the regulation that Partovi invokes applies to the extension of the mandatory 90-day removal period.  *See* ECF No. 1-1 at 8. Partovi's mandatory-detention period expired 24 years ago, so that provision doesn't apply to his detention.  I thus do not grant relief on the basis of that claim.